**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LINDA EKSTROM STANLEY,
            *Plaintiff-Appellant,*

v.

ALBERTO R. GONZALES, Attorney
General,
            *Defendant-Appellee.*

No. 04-17147

D.C. No.
CV-03-03032-CW

OPINION

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, District Judge, Presiding

Argued and Submitted
November 14, 2006—San Francisco, California

Filed January 16, 2007

Before: A. Wallace Tashima and M. Margaret McKeown,
Circuit Judges, and David O. Carter,* District Judge.

Opinion by Judge McKeown

*The Honorable David O. Carter, United States District Judge for the Central District of California, sitting by designation.

519

**COUNSEL**

Howard Moore, Jr., Moore and Moore, Oakland, California, for the appellant.

Todd M. Hughes, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for the appellee.

**OPINION**

McKEOWN, Circuit Judge:

United States Trustees, who are appointed by the Attorney General, oversee the administration of bankruptcy cases and private trustees. After the Attorney General removed Linda Ekstrom Stanley from her position as a United States Trustee, she challenged her removal as a violation of the separation of powers doctrine, the Appointments Clause, and her right to procedural due process. The district court dismissed her complaint for lack of jurisdiction on the grounds that the Civil Service Reform Act ("CSRA") precluded the court from hearing her constitutional claims for equitable relief even where she has no other remedies under the statute. We now affirm on slightly different grounds. We conclude that because Stanley's constitutional claims are not colorable, the district court properly dismissed for lack of subject matter jurisdiction. To the extent that there is a gap in our case law as to whether the CSRA precludes equitable relief for someone in Stanley's position with a colorable constitutional claim, we need not address that question nor determine how we might fill that gap today because Stanley's claims are without merit.

## BACKGROUND

In 1994, Linda Ekstrom Stanley was appointed as a United States Trustee for the Northern and Eastern Districts of California and the District of Nevada. Two years later, Attorney General Janet Reno reclassified the United States Trustee position as one of a "confidential, policy-determining, policy-making, or policy-advocating character." The Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (codified in scattered sections of 5 U.S.C.), exempts federal confidential employees from administrative review of adverse employment decisions. Thus, the reclassification exempted Trustees from the protections of the Merit Systems Protection Board ("MSPB"), the primary vehicle for resolution of disputes under the CSRA. In 1999, Attorney General Reno reappointed Stanley to serve a second five-year term. Attorney General John Ashcroft removed Stanley as United States Trustee in 2002, before her second five-year term expired. He removed her due "to a change in Presidential administration" and pursuant to his power under 28 U.S.C. § 581(c), which provides that "[e]ach United States trustee is subject to removal by the Attorney General."

Stanley pursued administrative relief through the MSPB, which concluded that because the Trustee position was classified as confidential and policy-making, Stanley was not an "employee" subject to the protections of the CSRA. 5 U.S.C. § 7511(b)(2). On appeal, the Federal Circuit held that the confidential designation was unreviewable in federal court, and that Stanley had no legal basis to challenge her removal. *Stanley v. Dep't of Justice*, 423 F.3d 1271 (Fed. Cir. 2005).

Stanley also challenged her removal by bringing this action in federal district court alleging constitutional violations and seeking injunctive relief in the form of reinstatement. The government moved to dismiss for lack of subject matter jurisdiction. The district court granted the motion, holding that the CSRA deprived the court of jurisdiction to hear Stanley's

complaint. Relying on the text and structure of the CSRA as well as case law interpreting the Act, the district court concluded that the CSRA is a "comprehensive and exclusive scheme" governing federal personnel matters. Although Stanley has no other avenues for redress, the district court held that this fact did not affect its analysis of CSRA preclusion. We review de novo the district court's decision to dismiss the complaint for lack of subject matter jurisdiction. *Orsay v. Dep't of Justice*, 289 F.3d 1125, 1128 (9th Cir. 2002).

## ANALYSIS

Stanley's principal argument on appeal is that the CSRA does not preclude judicial review of colorable constitutional claims for equitable relief. Essentially, she argues that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster v. Doe*, 486 U.S. 592, 603 (1988). In *Webster*, the Supreme Court held that a party must demonstrate a "heightened showing" that Congress intended to eliminate judicial review when a federal statute is construed to deny any judicial forum for a colorable constitutional claim. *Id.*

**[1]** The CSRA, enacted in 1978, created an elaborate framework for evaluating adverse personnel decisions against federal employees. *See United States v. Fausto*, 484 U.S. 439, 443, 452 (1988) (holding that the CSRA precluded claims for statutory relief under the Back Pay Act, 5 U.S.C. § 5596, because Congress's intent to preclude judicial relief was "fairly discernable"). The Act prescribes in great detail the protections and remedies applicable to such actions, including the availability of administrative and judicial review. *Id.* at 443.

**[2]** Under the Act, civil service employees are divided into three broad categories: (1) the senior executive service, (2) the competitive service, and (3) the excepted service. *See* 5 U.S.C. §§ 3132, 2102, 2103. The detailed protections and

remedies the CSRA affords federal civil servants do not apply uniformly to all covered employees; rather, relief is dependent upon an employee's classification within the Act. *See, e.g.*, *Fausto*, 484 U.S. at 445-46. Confidential employees like the United States Trustees are a subset of excepted employees and thus are not entitled to administrative review of adverse employment decisions. *See* 5 U.S.C. § 7511(b)(2)(C).

Even though the CSRA does not provide the same remedies to all employees covered by the Act, it is an "integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Fausto*, 484 U.S. at 445. Accordingly, we have held, even after *Webster*, that the CSRA bars both statutory claims and *Bivens* actions in federal courts.[1] *See Orsay*, 289 F.3d at 1128-32 (holding that the CSRA precludes claims under the Privacy Act and the Federal Tort Claims Act); *Blankenship*, 176 F.3d at 1195 (holding that the CSRA precludes *Bivens* actions).

After *Webster*, we have not directly addressed the issue whether the CSRA demonstrates the kind of heightened showing required to preclude judicial review of colorable constitutional claims where the sole remedy sought is equitable relief.[2] One post-*Webster* case, *Saul v. United States*, 928 F.2d 829, 840 (9th Cir. 1991), suggests that where a plaintiff has a remedy under the CSRA itself, he may not seek equitable relief

---

[1]A "*Bivens* action" is a commonly used phrase for describing a judicially created remedy allowing individuals to seek damages for unconstitutional conduct by federal officials. This constitutional tort theory was set out in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See Blankenship v. McDonald*, 176 F.3d 1192, 1194 n.3 (9th Cir. 1999).

[2]Before *Webster*, we held that where a civil service employee failed to exhaust his administrative remedies, he could be barred from seeking equitable relief for his constitutional claims. *See Veit v. Heckler*, 746 F.2d 508, 511 (9th Cir. 1984).

in the federal courts. In *Saul*, we first squarely held that regardless of whether a plaintiff has access to alternative remedies, the CSRA precludes *Bivens* claims. *See id.* ("[T]he CSRA precludes even those *Bivens* claims for which the act prescribes no alternative remedy."). At the same time, we affirmed the district court's denial of leave to amend the complaint to assert a claim for injunctive relief. *See id.* at 843. We noted that "the act provides its own limited form of injunctive relief," and held that "[t]he CSRA precludes Saul from seeking injunctive relief for his asserted constitutional injury just as it precludes him from bringing a *Bivens* action." *Id.*

*Saul* does not squarely address whether the CSRA precludes colorable constitutional claims sounding in equity where the plaintiff has no other remedy. Our sister circuits are split on this issue.[3] We defer deciding this question. Because Stanley has not presented colorable constitutional claims, *Webster*'s requirement of a heightened showing is not implicated in her case.[4]

**[3]** By its own terms, *Webster* requires a plaintiff's constitutional claims to be colorable. *See* 486 U.S. at 603; *see also Briseno v. INS*, 192 F.3d 1320, 1323 (9th Cir. 1999) (holding that *Webster* did not apply where petitioner did not raise col-

---

[3]*Compare Dotson v. Griesa*, 398 F.3d 156, 179 (2d Cir. 2005) (holding that equitable claims are precluded by the CSRA even if the plaintiff has no other remedy), *Lombardi v. Small Bus. Admin.*, 889 F.2d 959, 961-62 (10th Cir. 1989) (same), *and Pinar v. Dole*, 747 F.2d 899, 910-12 (4th Cir. 1984) (same), *with Mitchum v. Hurt*, 73 F.3d 30, 35-36 (3d Cir. 1995) (holding that regardless of plaintiff's availability to seek administrative remedies, the CSRA does not preclude equitable relief for constitutional claims), *and Hubbard v. EPA*, 809 F.2d 1, 11 (D.C. Cir. 1986) (same).

[4]We note that the government initially argued on appeal that the CSRA precludes all constitutional claims for relief, but shifted its position during oral argument. At argument, the government contended that the CSRA does not preclude review of colorable equitable constitutional claims but that affirmance is nevertheless warranted because Stanley does not raise colorable claims.

orable constitutional claims). A colorable claim is one which is not "wholly insubstantial, immaterial, or frivolous." *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 981 (9th Cir. 2002) (citation omitted). None of Stanley's constitutional arguments are colorable. We discuss each in detail below.

## A.   SEPARATION OF POWERS CLAIM

Stanley first argues that her removal by the Attorney General violated the doctrine of separation of powers because the Attorney General converted her term from a fixed period to at-will employment. More specifically, she argues that the Attorney General did not have the power to redesignate her position as confidential or policy-making, in part because the position has a special relationship to third parties. We disagree.

**[4]** The plain language of the statute governing United States Trustees expressly delegates the power to remove Trustees to the Attorney General, and it does not limit the power to remove Trustees in any specific way. *See* 28 U.S.C. § 581(c) ("Each United States trustee is subject to removal by the Attorney General.").[5] This type of delegation does not, in and of itself, violate the separation of powers. *See, e.g.*, *Webster*, 486 U.S. at 599-602 (upholding as a general principle a similar grant of discretion to the Director of the CIA while holding that the plaintiff could bring procedural due process, equal protection, and privacy-based claims).

**[5]** The legislative history of the United States Trustees Statute, 28 U.S.C. § 581, also supports the view that Congress intended to confer this authority on the Attorney General. Until 1986, § 581(c) stated that Trustees were "subject to removal *for cause* by the Attorney General." *See* Bankruptcy

---

[5]We express no opinion on whether there might be other constitutional limitations on this power, grounded, for example, in equal protection.

Judges, United States Trustees, and Family Farmer Bank-ruptcy Act of 1986, Pub. L. No. 99-554, § 111(c), 100 Stat. 3088 (1986). In 1986, the statute was amended to delete the "for cause" language. *Id.*

**[6]** We also agree with the Federal Circuit that the decision to classify a given position as confidential or policy-making is not reviewable in federal court as a violation of the separa-tion of powers doctrine. *See Stanley*, 423 F.3d at 1273. In *Stanley*, the Federal Circuit dismissed Stanley's appeal from her adverse judgment in the MSPB process. The court held that classification of her position as confidential or policy-making was an "inherently discretionary judgment call com-mitted to the Attorney General" and thus unreviewable. *Id.* (internal citations omitted); *cf. Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988) (holding that the President's decision to grant or deny a security clearance was similarly unreview-able).

Stanley argues for a broad rule that officers who have a special relationship to third parties may not be removed solely due to a change in Presidential administration, relying primar-ily on *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and *Wiener v. United States*, 357 U.S. 349 (1958). These cases do not stand for such a rule—rather, both cases stand for the proposition that a President may not remove a member of a quasi legislative or quasi-judicial body in the face of either restrictions imposed by Congress, *Humphrey's Executor*, 295 U.S. at 632, or a "congressional failure of explicitness," *Wiener*, 357 U.S. at 352-53. Stanley's case is easily distinguished because 28 U.S.C. § 581(c) neither imposes restrictions on the Attorney General's ability to act nor fails to elucidate the power it confers. Rather, it clearly accords the power to remove United States Trustees to the Attorney General.

By contrast, in *Humphrey's Executor,* the Federal Trade Commission Act delegated to the President the authority to

remove members of the Federal Trade Commission "for inefficiency, neglect of duty, or malfeasance in office." 295 U.S. at 622. The Court held that the intent of the act was "to limit the executive power of removal to the causes enumerated." *Id.* at 626. No such statutory limitation exists in the case of United States Trustees.

Similarly, in *Wiener*, the statute in question made no provision for removal, and the Court declined to accord the President plenary authority of removal in the face of congressional silence. 357 U.S. at 356. The plaintiff in *Wiener* claimed that the President could not remove him from the War Claims Commission simply because the President preferred "men of his own choosing" on the Commission. *Id.* at 356. The Court agreed, holding that in situations where a statute is silent on removal and the position at issue is one of "adjudicatory" authority, the President does not have the discretion to remove an individual at will. *See id.* at 356 (holding that no power of removal can be implied when Congress has "said nothing about it.").

**[7]** The statutory schemes in these cases stand in juxtaposition to the statutory dictate here—Congress specifically vested the authority to remove Trustees in the Attorney General and gave the Attorney General the power to make that decision with or without cause. No violation of the doctrine of separation of powers occurs when the Attorney General acts pursuant to express authorization from Congress in removing a United States Trustee.

## B. APPOINTMENTS CLAUSE CLAIM

**[8]** Stanley's second constitutional claim is similarly without support. Stanley argues that the Attorney General violated the Appointments Clause when he removed her, but her brief provides no legal or factual discussion to support this assertion. In any event, any reliance on the Appointments Clause to challenge Stanley's removal is misplaced. The Appoint-

ments Clause provides that the President must seek the advice and consent of the Senate to appoint principal officers. United States Const. art. II, § 2; *see also Morrison v. Olson*, 487 U.S. 654, 670-71 (1988). Congress may by law vest the appointment of inferior officers in the President alone, in the courts of law, or in the heads of departments. United States Const. art. II, § 2.

**[9]** Assuming without deciding that Stanley is an "officer" within the meaning of the Clause, the statute allowing the Attorney General to remove her at his discretion would violate the Appointments Clause only if she were a principal officer. *See Morrison*, 487 U.S. at 670-71 (noting that only principal officers need be selected by the President and confirmed by the Senate).

**[10]** Stanley nowhere contends that she is a principal officer for the purposes of the Clause. Nor could she. Under *Morrison*, we examine several factors to determine whether an officer is a principal or an inferior officer. First, we inquire whether the officer is subject to removal by a higher Executive Branch official. *Id.* at 671. Second, we look at whether the officer is empowered to perform only certain, limited duties. *Id.* Finally, we look at whether an officer's duties are limited in jurisdiction. *Id.* at 672. Generally, if an officer is limited in "tenure, duration, [and] . . . duties," those findings lead to the conclusion that she is an inferior officer. *Id.* Stanley was the United States Trustee for Region 17 of the United States (including the Northern and Eastern Districts of California and the District of Nevada), and she was initially appointed to a five-year term. Her position was limited geographically, temporally, and topically. If she was an officer at all, she was most certainly an inferior officer. It is well established that Congress may vest the appointment of inferior officers in the Department of Justice. *See id.* at 674 ("It is no doubt usual and proper to vest the appointment of inferior officers in that department of the government, executive or

judicial, or in that particular executive department to which the duties of such officers appertain.").

## C.  PROCEDURAL DUE PROCESS CLAIM

Stanley finally urges that her removal violated her right to procedural due process because she has a protected interest in continued employment for the duration of her second five-year term. This contention is without support.

**[11]** To assert a procedural due process claim under the Fifth Amendment, Stanley must first establish a constitutionally protected interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972). Stanley must have more than a unilateral expectation of it; instead, she must have a legitimate claim of entitlement. *Id.* at 577.

Stanley's appointment to a position for a fixed term does not in itself require that she be allowed to serve the entire term, absent removal for cause. Inferior officers may be removed before the end of their statutorily defined terms. *Parsons v. United States*, 167 U.S. 324, 339 (1897) (holding that an incumbent in a term position may be removed prior to the term's expiration). When Congress created the office of the United States Trustee, it was legislating in light of a "longstanding rule in the federal courts that a fixed term merely provides a time for the term to end." *See Stanley*, 423 F.3d at 1274 (citing *Pievsky v. Ridge*, 98 F.3d 730, 734 (3d Cir. 1996)). Stanley had no entitlement to serve out the remainder of her term because she could have been removed without cause. *See* 28 U.S.C. § 581(c).

**[12]** Because Stanley had no entitlement to continued employment, the Attorney General's actions in removing her did not violate her right to procedural due process under the Fifth Amendment. *See Town of Castle Rock v. Gonzales*, 125 S. Ct. 2796, 2799 (2005) (holding that a benefit is not a protected entitlement if government officials may grant or deny

it in their discretion); *see also Roth*, 408 U.S. at 575, 577 (holding that untenured professor did not have a property interest in being rehired by state university, absent state statute or university policy indicating to the contrary).

**[13]** Because none of Stanley's constitutional claims presents even colorable arguments, we affirm the district court's dismissal for lack of subject matter jurisdiction.

**AFFIRMED.**