**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES LOCAL 1;
JOHN GAVELLO,
            *Plaintiffs-Appellants,*

                    v.                          No. 05-15206

DAVID M. STONE; TRANSPORTATION             D.C. No.
SECURITY ADMINISTRATION; U.S.           CV-04-01274-CW
DEPARTMENT OF HOMELAND
SECURITY; KIP HAWLEY,                       OPINION
Administrator, Transportation
Security Administration,
Department of Homeland Security,
            *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, District Judge, Presiding

Argued and Submitted
January 11, 2007—San Francisco, California

Filed September 5, 2007

Before: A. Wallace Tashima and William A. Fletcher,
Circuit Judges, and H. Russel Holland,* District Judge.

Opinion by Judge William A. Fletcher

---

*The Honorable H. Russel Holland, Senior United States District Judge
for the District of Alaska, sitting by designation.

11711

**COUNSEL**

Mark D. Roth, Joe Goldberg, Gony Frieder, American Federation of Government Employees AFL-CIO, Washington, D.C., for the appellants.

William G. Kanter, Mark W. Pennak, U.S. Department of Justice, Washington, D.C., for the appellees.

## OPINION

W. FLETCHER, Circuit Judge:

Plaintiffs-Appellants American Federation of Government Employees, Local 1 ("AFGE") and John Gavello appeal the district court's dismissal of their action against the Administrator of the Transportation Security Administration ("TSA") in his official capacity. The district court held that Plaintiffs-Appellants were not entitled to judicial review of their claims that the TSA violated their First Amendment rights by disciplining and then discharging Gavello, a TSA security screener, for engaging in union activities. The district court also held that AFGE lacked standing.

We reverse. If Congress wishes to deny federal employees the ability to redress alleged constitutional violations, it must state its intention clearly. We conclude that the statutory scheme governing TSA security screeners does not express a clear intention on the part of Congress to preclude judicial review of screeners' constitutional claims. The district court therefore has subject matter jurisdiction over Plaintiffs-Appellants' action. We further conclude that AFGE has standing.

### I.  Background

For purposes of this decision, we accept all of the allegations in Plaintiffs-Appellants' complaint as true. The complaint alleges that John Gavello began working as a security screener at Oakland International Airport on March 30, 2003. In October 2003, Gavello spoke to a screening supervisor and a screening manager about his plans to distribute and post

AFGE literature during break times. Gavello posted union materials in the employee break room and made union forms available to fellow employees throughout November 2003.

In response to Gavello's union activities, TSA management allegedly began "building a file against Mr. Gavello." On November 20, Gavello received what the complaint describes as a "written verbal warning" for conducting union activities on the job. The next day, November 21, Gavello was called to a manager's office and asked various questions about his union activities. He refused to respond and was subsequently placed on paid administrative leave while TSA management investigated whether he had engaged in union activities while on duty.

The TSA permitted Gavello to return to work on December 5, 2003. Shortly thereafter, he received a "Memorandum of Counseling" "for speaking on behalf of other employees, asking for written verification of policies, and posting union materials before receiving approval from TSA management." He also received a "Letter of Warning" related to his activities.

On February 20, 2004, Gavello mailed a "second step grievance" to Deputy Federal Security Director Calvin Yuen "request[ing] written procedures regarding baggage inspection swiping and sampling as they are not currently included in the [TSA's] standard operating procedures." The words "cc: AFGE Legal Counsel" appeared at the end of Gavello's grievance letter. The TSA terminated Gavello six days after he sent the letter. The TSA justified its action by stating that Gavello improperly disclosed sensitive security information to an unauthorized party, namely, AFGE's legal counsel.

At the time of his termination, Gavello had been employed by TSA for less than one year and was therefore considered a probationary screener. The parties in this case agree that "there is no administrative scheme that would afford proba-

tionary TSA screeners, such as John Gavello, with any administrative forum in which to seek relief for [their] discharge." When Congress established the TSA and federalized airport security screeners in late 2001, it set out specific hiring and training requirements for TSA security screeners. *See, e.g.*, Aviation and Transportation Security Act ("ATSA"), Pub. L. No. 107-71, § 111(a), 115 Stat. 597, 616-20 (2001) (codified at 49 U.S.C. § 44935(e)-(j)). It then included a catchall provision giving the TSA Administrator significant discretion over the employment of security screeners: "Notwithstanding any other provision of law, the [TSA Administrator] may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for such a number of individuals as the [Administrator] determines to be necessary to carry out . . . screening functions." ATSA § 111(d), 115 Stat. at 620 (codified at 49 U.S.C. § 44935 (note)); *see also* H.R. Conf. Rep. No. 107-296, at 64 (2001), *reprinted in* 2002 U.S.C.C.A.N. 589, 600 (confirming that Congress intended for the TSA Administrator to have "wide latitude to determine the terms of employment of screeners"); *id.* ("[P]articipants in this Federal security workforce will not be able to strike or engage in work stoppages, and can be fired at the discretion of the [Administrator] if they are not able to adequately perform their duties.").

Pursuant to its catchall authority, the TSA Administrator issued a Human Resources Management Letter dated July 29, 2002, which declared that all screeners are subject to a one-year probationary period and "may be terminated at any time" during that period. HRM Letter 300-2, ¶ 5(g)(1) (July 29, 2002). Although the letter provides that the TSA will "state the reason for the termination" of probationary screeners, it also provides that such screeners have "no right of reply" and may not bring an administrative appeal. *Id.* ¶¶ 5(g)(4), 5(I); *see also Conyers v. Merit Sys. Prot. Bd.*, 388 F.3d 1380, 1382 (Fed. Cir. 2004). By contrast, non-screener TSA employees are covered by the "personnel management system" of the Federal Aviation Administration ("FAA"). *See* ATSA

§ 101(a), 115 Stat. at 601 (codified at 49 U.S.C. § 114(n)). The FAA's personnel management system, which operates parallel to the Civil Service Reform Act of 1978 ("CSRA"), allows employees, including employees with less than one year of service, to appeal personnel actions to the Merit Systems Protection Board ("MSPB") and to seek judicial review of MSPB decisions. *See* 49 U.S.C. § 40122(g).

Having no administrative recourse, Plaintiffs-Appellants filed suit in federal district court on April 1, 2004, claiming that the TSA violated their First Amendment speech and associational rights "by penalizing Mr. Gavello's exercise of his legal right of advocacy of union membership." According to the complaint, approximately 50 Oakland security screeners had joined AFGE since Gavello began his organizing efforts, but his termination "has [had] a chilling effect on other screeners." Plaintiffs-Appellants requested the following relief: (1) a declaration that the TSA's discipline and dismissal of Gavello violates Plaintiffs-Appellants' First Amendment rights; (2) an order rescinding the Memorandum of Counseling, Letter of Warning, and Letter of Termination from Gavello's personnel records; (3) the restoration of Gavello's employment; (4) back pay with interest and the restoration of all benefits Gavello lost during his period of termination; (5) an injunction preventing the TSA from retaliating against Gavello and other AFGE members; and (6) attorney's fees and costs.

Defendants-Appellees ("the government") responded by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The government argued that by excluding TSA screeners from the protections of the CSRA or the FAA personnel management system, and by granting the TSA Administrator unfettered discretion to determine screeners' employment terms and conditions, Congress intended to preclude judicial review of screeners' constitutional claims. The government also argued

that AFGE lacked standing to sue either on its own behalf or on behalf of Gavello.

The district court accepted these arguments and issued an order on December 2, 2004, dismissing the complaint with prejudice. The court reasoned that the CSRA is a "comprehensive and exclusive scheme to govern federal personnel matters" and that Congress's decision not to extend the CSRA's protections to TSA screeners therefore indicated that Congress did not intend to permit screeners to obtain judicial review of personnel decisions. The court explained that AFGE lacked standing because the complaint did not allege that Gavello was actually a member of AFGE, and because Gavello's claims were unreviewable. Plaintiffs-Appellants timely appealed.

## II.   AFGE's Standing

The district court concluded that AFGE had no standing to sue either on its own behalf or on behalf of Gavello. The court rested its decision partly on the ground that Gavello was not entitled to review of his First Amendment claims and partly on the ground that the complaint did not specify that Gavello was an AFGE member. As we explain in the next section, Gavello's claims are reviewable. We now conclude that, even if Gavello is not an AFGE member, AFGE satisfies both the constitutional and prudential requirements for standing.

[1] Plaintiffs-Appellants' complaint does not directly state that Gavello is an AFGE member. We are required, however, to "construe the complaint in a light most favorable to the non-moving party," *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007), and to "draw[ ] all reasonable inferences from the complaint in [that party's] favor," *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). Given Gavello's efforts to recruit other TSA screeners to join AFGE, it is reasonable to infer that Gavello himself was a member. Moreover, the section of the complaint stating Plaintiffs-

Appellants' "Prayer for Relief" requests that the court "[e]njoin[ ] Defendant and his agents from retaliating against Plaintiff Gavello and/or *other members* of Plaintiff AFGE Local 1." (Emphasis added.) The use of the phrase "other members" strongly suggests that Gavello himself is a member.

**[2]** But even if Gavello were not an AFGE member, our result would be the same. It is well established that an organization "may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). The question is simply whether the organization satisfies the usual requirements for standing. As a constitutional matter, a plaintiff must make the following showings:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). The Supreme Court has explained that each of these elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Thus, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' " *Id*. (second alteration in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

**[3]** The allegations set out in the complaint are sufficient to satisfy each of the required showings. First, with respect to injury in fact, the complaint fairly alleges that the TSA's actions have interfered with AFGE's ability to solicit membership and communicate its message. The complaint states that Gavello's termination has had a "chilling effect on other screeners from joining AFGE Local 1." As the Supreme Court has held, actions that "perceptibly impair[ ]" an organization's ability to carry out its mission impose a "concrete and demonstrable" injury in fact. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). In this case, an increased difficulty in recruiting union members qualifies as a "concrete and demonstrable" injury. Second, AFGE's asserted injury is fairly traceable to the TSA's decision to discipline and discharge Gavello, which deprived AFGE of an employee-organizer and conveyed to other screeners that union activity would not be tolerated. Third, AFGE's asserted injury would likely be redressed if it were to prevail on the merits, particularly if, as AFGE has requested, the district court enjoins the TSA "from retaliating against Plaintiff Gavello and/or other members of Plaintiff AFGE Local 1."

Indeed, the Supreme Court has squarely held that a union may have standing to challenge governmental interference with organizing activities. In *Allee v. Medrano*, 416 U.S. 802 (1974), the United Farm Workers brought suit against state officials in Texas alleging that they had conspired to deprive the union and others of their First Amendment rights. *Id.* at 804-05. The Court explained that the union was entitled to pursue its action:

> In this case the union has standing as a named plaintiff to raise any of the claims that a member of the union would have standing to raise . . . . [I]t has been implicitly recognized that protected First Amendment rights flow to unions as well as to their members and organizers. If, as alleged by the union in its complaint, its members were subject to unlaw-

ful arrests and intimidation for engaging in union organizational activity protected by the First Amendment, the union's capacity to communicate is unlawfully impeded, since the union can act only through its members. The union then has standing to complain of the arrests and intimidation and bring this action.

*Id.* at 819 n.13 (citations omitted); *see also id.* at 829 (Burger, C.J., concurring in part and dissenting in part) ("I agree with the Court that unions, as entities, in addition to union members and organizers, are entitled to the benefit of those guarantees and that a union may sue . . . to enforce its First Amendment rights.").

The government nevertheless maintains that AFGE has not suffered a redressable injury because the complaint merely describes AFGE's efforts to win collective bargaining rights. In the government's view, because the TSA has banned collective bargaining for security screeners, "any interest that AFGE may have in representing TSA screeners is simply not legally cognizable." We disagree both with the government's characterization of the complaint and with its assertion that AFGE has not alleged a cognizable injury. First, the complaint does not even allude to "collective bargaining." Rather, the complaint alleges that the TSA unlawfully interfered with AFGE's efforts to recruit and communicate with members. It states that Gavello was involved in "organizing" and that he distributed "union membership" forms. It also contends that Gavello's termination chilled "other screeners from joining AFGE." Second, the fact that the TSA has banned collective bargaining does not mean that a union representing TSA employees has no useful function; nor does it mean that the TSA has free rein to retaliate against screeners who speak in favor of collective bargaining rights. *See Garcetti v. Ceballos*, 126 S. Ct. 1951, 1957 (2006) ("The Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First

Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."); *see also Am. Fed'n of Gov't Employees v. Loy*, 281 F. Supp. 2d 59, 65 (D.D.C. 2003), *aff'd*, 367 F.3d 932 (D.C. Cir. 2004) (noting that the TSA's ban on collective bargaining "does not prevent airport screeners from engaging in organizing activities or joining [AFGE]").

   **[4]** The government further contends that, even if AFGE satisfies the constitutional requirements for standing, it does not satisfy the prudential rule that parties must assert their own rights rather than the rights of third parties. *See, e.g.*, *Warth*, 422 U.S. at 499. The government's argument fails for the simple reason that AFGE is, in fact, asserting its own rights. The complaint plainly states that the TSA's conduct "abrogates *Plaintiffs'* right of free speech [and free association] under the First Amendment." (Emphasis added.) As the Supreme Court has noted, "First Amendment rights flow to unions as well as to their members and organizers." *Allee*, 416 U.S. at 819 n.13. Moreover, given that Gavello is a plaintiff, there is little risk of AFGE attempting to vindicate rights that Gavello himself would not wish to vindicate and little risk that Gavello will be denied effective advocacy. *See Singleton v. Wulff*, 428 U.S. 106, 113 (1976) (plurality opinion) (noting that courts should be reluctant to "resolv[e] a controversy . . . on the basis of the rights of third persons *not parties to the litigation*" (emphasis added)). We therefore conclude that AFGE has standing to raise its First Amendment claims.

   III.   Jurisdiction to Review the Administrative Action

   In the district court, the government argued successfully that Plaintiffs-Appellants' suit should be dismissed on jurisdictional grounds. The Supreme Court subsequently granted certiorari in *Whitman v. Department of Transportation*, 126 S. Ct. 2014 (2006) (per curiam), another case involving the right of a federal employee to obtain judicial review of constitutional claims. In its briefing in *Whitman*, the government

adopted a position that was contrary to the position it had taken before the district court in the present case. Specifically, the government accepted that the language of the CSRA did not provide the clarity necessary to foreclose judicial review of an employee's constitutional claims. Brief for the Respondents at 45-49, *Whitman*, 126 S. Ct. 2014 (No. 04-1131). The Supreme Court in *Whitman* did not decide the reviewability question. However, consistent with its arguments in *Whitman*, the government now "concede[s] that total preclusion of [an employee's] equitable constitutional claims could not be sustained" and agrees with Plaintiffs-Appellants that dismissal for lack of jurisdiction was inappropriate. Despite the government's turnaround, we have an independent duty to determine our jurisdiction. *See, e.g.*, *Latman v. Burdette*, 366 F.3d 774, 781 n.5 (9th Cir. 2004). "We review the question of subject matter jurisdiction *de novo*." *Marceau v. Blackfeet Hous. Auth.*, 455 F.3d 974, 978 (9th Cir. 2006).

**[5]** "[W]hether the CSRA precludes colorable constitutional claims sounding in equity where the plaintiff has no other remedy" is a question of first impression in this circuit. *Stanley v. Gonzales*, 476 F.3d 653, 657 (9th Cir. 2007) (leaving the question unresolved because the plaintiff had failed to raise "colorable constitutional claims"). We agree with the parties that *Webster v. Doe*, 486 U.S. 592 (1988), provides the relevant legal framework. At issue in *Webster* was whether the CIA Director's decision to terminate an employee, allegedly because of the employee's sexual orientation, was subject to judicial review on statutory and constitutional grounds. *Id.* at 595-99. The government maintained that the Director's decision was unreviewable because it was made pursuant to § 102(c) of the National Security Act of 1947, which stated that, "[n]otwithstanding . . . the provisions of any other law, the Director of Central Intelligence may, in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States." National

Security Act of 1947 ("NSA"), ch. 343, § 102(c), 61 Stat. 495, 498; *see Webster*, 486 U.S. at 597.

The Supreme Court agreed with the government that the employee could not seek judicial review under the Administrative Procedure Act because "the language and structure of § 102(c) indicate that Congress meant to commit individual employee discharges to the Director's discretion." *Webster*, 486 U.S. at 601. However, the Court concluded that § 102(c) did not prevent the plaintiff from pursuing his constitutional claims. The Court explained that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear . . . . We require this heightened showing in part to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id*. at 603 (citations omitted); *see also Stanley*, 476 F.3d at 656 ("In *Webster*, the Supreme Court held that a party must demonstrate a 'heightened showing' that Congress intended to eliminate judicial review when a federal statute is construed to deny any judicial forum for a colorable constitutional claim."); *cf. McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991) (applying the "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action"); *Davis v. Passman*, 442 U.S. 228, 242 (1979) ("[L]itigants who allege that their own constitutional rights have been violated, and who at the same time have no effective means other than the judiciary to enforce these rights, must be able to invoke the existing jurisdiction of the courts for the protection of their justiciable constitutional rights."); *Johnson v. Robison*, 415 U.S. 361, 373-74 (1974) (holding that a statute restricting review of decisions made by the Administrator of Veterans' Affairs did not "provide[ ] the 'clear and convincing' evidence of congressional intent required by this Court before a statute will be construed to restrict access to judicial review" of constitutional claims).

[6] Thus, as in *Webster*, our task here is to decide whether the statutory scheme that covers TSA screeners such as

Gavello expresses a clear intention on the part of Congress to prohibit judicial review of employees' colorable constitutional claims. We conclude that it does not. Indeed, the language Congress used when it enacted ATSA is quite similar to the statutory language at issue in *Webster*, which the Supreme Court held was not sufficiently clear to bar review of constitutional claims. ATSA permits the TSA Administrator, "[n]otwithstanding any other provision of law," to terminate screeners "as the [Administrator] determines to be necessary to carry out . . . screening functions." ATSA § 111(d), 115 Stat. at 620 (codified at 49 U.S.C. § 44935 (note)). Meanwhile, the provision at issue in *Webster* permitted the Director of CIA, "[n]otwithstanding . . . the provisions of any other law," to terminate employees "whenever he shall deem such termination necessary or advisable in the interests of the United States." NSA § 102(c), 61 Stat. at 498. Although both provisions authorize officials to exercise substantial discretion when making termination decisions, neither provision expressly precludes employees from challenging their termination on constitutional grounds. Indeed, the government states in its briefing that "the United States has concluded that Section 111(d) of the ATSA cannot be reasonably read as satisfying the 'heightened showing' of congressional intent necessary to construe a federal statute completely 'to preclude judicial review of constitutional claims.' " (quoting *Webster*, 486 U.S. at 603).

In deciding that it lacked subject matter jurisdiction, the district court did not discuss *Webster*. Instead, the court relied on *United States v. Fausto*, 484 U.S. 439 (1988), which the Supreme Court decided just a few months before it decided *Webster*. Unlike *Webster*, *Fausto* did not involve any constitutional claims. The question in *Fausto* was whether an Interior Department employee who alleged that he had been suspended from his job in violation of departmental regulations could bring suit in the United States Claims Court for back pay. *Id*. at 440-41. Because the employee was classified as a "nonpreference eligible [employee] in the excepted ser-

vice," the CSRA did not permit him to pursue an administrative appeal before the MSPB. *Id.* at 442. The Court explained in *Fausto* that Congress intended the CSRA to provide "an integrated scheme of administrative and judicial review" of personnel actions taken against civil servants. *Id.* at 445. The Court held that permitting the employee to bring suit in the Claims Court asserting a violation of departmental regulations would improperly circumvent the CSRA: "[The CSRA's] deliberate exclusion of employees in respondent's service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevents respondent from seeking review in the Claims Court under the Back Pay Act." *Id.* at 455.

*Fausto* and *Webster* thus address distinct issues. When Congress decides to exclude an employee from the protections of the CSRA or an analogous scheme, such as the FAA's personnel management system, *Fausto* precludes the employee from obtaining judicial review of statutory or regulatory claims. However, under *Webster*, the employee may still obtain judicial review of constitutional claims unless Congress, in addition to excluding the employee from the protections of the CSRA or an analogous scheme, has also expressly declared its intention to preclude review of constitutional claims. Because Plaintiffs-Appellants in this case raise constitutional claims, it is *Webster*, not *Fausto*, that controls.

The district court also relied on cases from this circuit holding that the CSRA precludes federal employees from bringing *Bivens* actions even when the employee has no alternative remedy. *See, e.g.*, *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1020 (9th Cir. 1999); *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir. 1999); *Saul v. United States*, 928 F.2d 829, 840 (9th Cir. 1991). However, the rationale for these decisions does not extend to cases, such as this one, in which an employee seeks equitable relief. Instead, these decisions merely reflect the courts' general reluctance to allow damages as a judicially created remedy for constitutional

torts. As the Supreme Court recently reiterated, "any free-standing damages remedy for a claimed constitutional violation has to represent a judgment about the best way to implement a constitutional guarantee; it is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most instances we have found a *Bivens* remedy unjustified." *Wilkie v. Robbins*, 127 S. Ct. 2588, 2597 (2007); *see also Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) (stating that the Court has "responded cautiously to suggestions that *Bivens* remedies be extended into new contexts" and that "[t]he absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages"); *Bush v. Lucas*, 462 U.S. 367, 388, 390 (1983) (holding that the "comprehensive nature of the remedies currently available" under the CSRA precluded a federal employee from pursuing a *Bivens* action to remedy a claimed First Amendment violation).

We recognize that one of our cases, *Saul v. United States*, suggests that employees might be precluded from seeking equitable relief as well as damages for constitutional violations. 928 F.2d at 843. Saul brought a *Bivens* action against his supervisors at the Social Security Administration, alleging that they had violated his First Amendment rights by seizing and opening his personal mail. *Id.* at 831. After concluding that Saul could not maintain his *Bivens* action, *see id.* at 838-39, we briefly addressed Saul's request to amend his complaint to request injunctive relief. We wrote that amendment "would be futile" because "[t]he CSRA's elaborate remedies show that judicial interference in federal employment is disfavored, whether the employee requests damages or injunctive relief." *Id.* at 843. Thus, "[t]he CSRA precludes Saul from seeking injunctive relief for his asserted constitutional injury just as it precludes him from bringing a *Bivens* action for damages." *Id.*

We conclude that *Saul* is distinguishable from this case because Saul could have availed himself of alternative mecha-

nisms to pursue his constitutional claim. Specifically, Saul could have challenged his supervisors' actions under at least two CSRA appeal procedures rather than proceeding directly to federal court, and injunctive relief would have been available as a remedy. *Id.* at 833-35, 843. By contrast, the parties in this case agree that Gavello has no remedies available under the CSRA or ATSA and that judicial review is the only means by which he can attempt to vindicate his constitutional rights. Extending *Saul* to cases in which no alternative remedy is available seems particularly ill advised given that our opinion in *Saul* failed to make any mention of *Webster*, in which the Supreme Court declared that a " 'serious constitutional question' . . . would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster*, 486 U.S. at 603. Indeed, we recently observed that none of our precedents, including *Saul*, "directly addresse[s] the issue whether the CSRA demonstrates the kind of heightened showing required [under *Webster*] to preclude judicial review of colorable constitutional claims where the sole remedy sought is equitable relief." *Stanley*, 476 F.3d at 657.

We also recognize that three of our sister circuits have held since *Webster* that the CSRA precludes federal employees from pursuing constitutional claims for equitable relief as well as for damages. *See Dotson v. Griesa*, 398 F.3d 156, 181 (2d Cir. 2005) ("The integration of equitable relief, including reinstatement, into the CSRA's comprehensive statutory scheme evinces Congress's intent to determine for itself the scope of that relief and to preclude its applicability to federal employment disputes except where provided by statute."); *Lombardi v. Small Bus. Admin.*, 889 F.2d 959, 962 (10th Cir. 1989) ("[J]udicial intervention [in federal personnel matters] is disfavored whether it is accomplished by the creation of a damages remedy or injunctive relief."); *Berrios v. Dep't of Army*, 884 F.2d 28, 31 (1st Cir. 1989) ("Given that plaintiff's constitutional claims amount to a federal law challenge to an adverse personnel action, they are preempted by the CSRA

consistent with the reasoning of *Bush* and *Fausto*."). *But cf. Hardison v. Cohen*, 375 F.3d 1262, 1266 (11th Cir. 2004) (stating that "whether the unavailability of a *Bivens* action for damages for a federal employee means that he is also barred from obtaining equitable relief for an alleged violation of the Constitution" remains an open question in the Eleventh Circuit). Two of these cases, *Dotson* and *Berrios*, are distinguishable because, as in *Saul*, the employee had other remedial mechanisms available. *See Dotson*, 398 F.3d at 181 (noting that the court's interpretation of the statute "did not leave judicial branch employees without any relief for employment grievances"); *Berrios*, 884 F.2d at 33 (noting that plaintiff could still obtain review of his claim in the Federal Circuit). The third case, *Lombardi*, provided little support for its conclusion and, in our view, gave short shift both to *Webster*'s clear statement rule and to the differences between *Bivens* actions and our traditional power to fashion equitable remedies.

We find more persuasive the reasoning of the Third Circuit and the D.C. Circuit. *See Mitchum v. Hurt*, 73 F.3d 30 (3d Cir. 1995) (Alito, J.); *Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988) (en banc) (per curiam). As in this case, the plaintiffs in *Mitchum* alleged that they were disciplined by their superiors in retaliation for exercising their First Amendment rights. They sought declaratory and injunctive relief. *Mitchum*, 73 F.3d at 31. Unlike the plaintiffs in this case, the plaintiffs in *Mitchum* had alternative statutory remedies. *See id.* at 31-32. Writing for the court, then-Judge Alito discussed the Supreme Court's decisions in *Bush* and *Chilicky*, which restricted the ability of federal employees to bring *Bivens* actions. He stated that, "[b]ased on these decisions[,] . . . a good argument can be made that a federal employee who has meaningful administrative remedies and a right to judicial review under the CSRA or another comparable statutory scheme should not be permitted to bypass that scheme by bringing an action under 28 U.S.C. § 1331 and seeking injunctive or declaratory relief." *Id.* at 34. He then observed,

however, that "the Supreme Court has developed a special jurisprudence for *Bivens* claims, and we are hesitant to extend this jurisprudence into other spheres." *Id*. at 35. He explained:

> The power of the federal courts to grant equitable relief for constitutional violations has long been established. Thus, . . . there is a "presumed availability of federal equitable relief against threatened invasions of constitutional interests." It is reasonable to assume that Congress legislates with the understanding that this form of judicial relief is generally available to protect constitutional rights. While Congress may restrict the availability of injunctive relief, we believe that we should be very hesitant before concluding that Congress has impliedly imposed such a restriction on the authority to award injunctive relief to vindicate constitutional rights.

*Id*. (citations and internal quotation marks omitted) (quoting *Hubbard v. EPA*, 809 F.2d 1, 11 (D.C. Cir. 1986)).

*Mitchum* relied in part on the D.C. Circuit's en banc decision in *Spagnola*. At issue in *Spagnola* was whether two federal employees who claimed violations of their constitutional rights could pursue *Bivens* actions. The court held that they could not. *Spagnola*, 859 F.2d at 229. Citing *Bush* and *Chilicky*, the court declared that "courts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has 'not inadvertently' omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies." *Id*. at 228. The court found "nothing in the legislative history suggesting that Congress' omission of a damages remedy in the CSRA was anything but advert, nor . . . any clear expression of congressional intent that the courts preserve *Bivens* remedies." *Id*. at 229. However, the court continued:

> While we decline to extend *Bivens* remedies to [the plaintiffs], we do not suggest that the CSRA precludes the exercise of federal jurisdiction over the constitutional claims of federal employees and job applicants altogether. On the contrary, time and again this court has affirmed the right of civil servants to seek equitable relief against their supervisors, and the agency itself, in vindication of their constitutional rights.

*Id*. at 229-30 (citations omitted). The court cited with approval its earlier decision in *Hubbard*, which stated that, as a general matter, "federal courts have jurisdiction to grant equitable relief to remedy agency violations of constitutional rights." *Hubbard*, 809 F.2d at 11.

**[7]** Consistent with *Mitchum* and *Spagnola*, and with the position of both sides in this case, we conclude that the district court erred when it dismissed Plaintiffs-Appellants' suit for lack of subject matter jurisdiction. We hold that the statutory scheme governing Gavello's employment does not clearly state an intention on the part of Congress to preclude judicial review of constitutional claims. Plaintiffs-Appellants are therefore entitled to seek equitable relief based on the alleged violation of their First Amendment rights.

## IV. Back Pay

Although the government concedes that the district court has jurisdiction over Plaintiffs-Appellants' claims for equitable relief, it argues that their claim for back pay should be dismissed on sovereign immunity grounds. According to the government, neither the Administrative Procedure Act's judicial review provision, 5 U.S.C. § 702, nor the Back Pay Act, 5 U.S.C. § 5596, authorizes a back-pay remedy in the district court in this case. The government readily admits that it did not raise this argument before the district court, and we decline to address it here. We leave it to the district court to

decide the issue on remand once the parties have had a full opportunity to develop their arguments before that court.

## V.   Failure to State a Claim

As a fallback position, the government argues that we should dismiss Plaintiffs-Appellants' action pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." The government did not file a Rule 12(b)(6) motion in district court; instead, it sought dismissal solely on subject matter jurisdiction and standing grounds. Although "[w]e may affirm the district court's dismissal on any ground supported by the record," *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), we decline to consider the government's argument in the first instance. Indeed, to hold otherwise might encourage defendants to circumvent the district court by filing a motion to dismiss in district court exclusively on jurisdictional grounds and then appealing the district court's denial of the motion and asking this court to decide whether plaintiffs had stated a claim for relief. Such a result would be inconsistent with our general rule that defendants are not entitled to interlocutory appellate review of a district court's denial of a Rule 12(b)(6) motion. *See Figueroa v. United States*, 7 F.3d 1405, 1408 (9th Cir. 1993) ("Ordinarily, the denial of a 12(b)(6) motion is not a reviewable final order; it is only when a question of immunity is involved that we use the collateral order doctrine to exercise jurisdiction.").

## Conclusion

We reverse the district court's dismissal of Plaintiffs-Appellants' suit for lack of subject matter jurisdiction and standing. We remand to the district court for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.